**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

JOSEPH MACKOOL, *et al.*,

    Plaintiffs,

v.

CLAYTON HOMES, INC.,

    Defendant.

2:07-cv-00667-RLH-LRL

**MOTION TO ENFORCE SETTLEMENT AGREEMENT (#24)**

**REPORT & RECOMMENDATION**

    This is a personal injury and property damage action brought by Joseph Mackool, his wife Star Mackool (individually and as guardian of Jolina Mackool, Joseph and Star's ten-year old daughter), and Robin Hebrock, the Mackools' adult daughter (collectively "plaintiffs"), seeking damages from defendant Clayton Homes for alleged defective construction and installation of plaintiffs' manufactured home in Pahrump, Nevada. Pet. (#1). Before the court is Clayton Homes' Motion to Enforce Settlement Agreement (#24), in which Clayton Homes seeks an order enforcing the terms of a settlement agreement allegedly entered into with plaintiffs. Joseph Mackool filed an Opposition (#25), Clayton Homes a Reply (#27), and Joseph Mackool a "Reply" (#31). Counsel for plaintiffs, Eric Dobberstein, Esq. ("Dobberstein"), joined in the motion. *See* Joinder (#30).

    A hearing on the motion was conducted on October 7, 2008. Having considered the motion, opposition, replies, joinder, and the arguments made at the hearing, the court submits this Report and Recommendation.

**BACKGROUND**

    On April 10, 2007, plaintiffs filed a Complaint against Clayton Homes in the District Court for Clark County, Nevada seeking relief based upon tort and breach of contract. On May 24, 2007, the state court proceeding was removed to this court based on diversity jurisdiction.

On June 24, 2008, during the deposition of Star Mackool, Clayton Homes made an oral offer of global settlement to plaintiffs' counsel in the amount of $35,000. *See* Exh. A-C to Mot. (#24); *see also* Exh. 2 to Joinder (#30). Star Mackool's deposition and the planned inspection of the residence were postponed to provide plaintiffs the opportunity to consider the offer. Exh. B to Mot. (#24).

On June 30, 2008, Dobberstein met with Joseph, Star and Jolina Mackool at his office to discuss the settlement offer. After evaluating the merits of the case, Dobberstein left the conference room to give the Mackools an opportunity to discuss the matter amongst themselves. When Dobberstein returned, the Mackools indicated they were willing to accept settlement of all claims for $35,000. Dobberstein asked the Mackools how they wanted the settlement monies to be disbursed between the four (4) plaintiffs. The Mackools couldn't come to a decision, and said they'd consider the matter and call Dobberstein the next day.

On July 1, 2008, Joseph Mackool sent to Lance Welch, Esq., an attorney at Dobberstein & Associates, an e-mail accusing him of practicing as an unlicensed "attorney," and making various other criminal accusations. (Welch has been a member of the State Bar of Nevada since October 20, 2005.) Dobberstein contacted Joseph Mackool to discuss the unusual e-mail, at which point the latter said he believed Dobberstein and Welch had committed treason against the United States by being admitted to the "Bar." Joseph Mackool explained that to become members of the "Bar," Dobberstein and Welch had sworn a secret four (4)-part oath of allegiance to England. Joseph Mackool also noted that by receiving the title of Esquire, Dobberstein and Welch had illegally assumed a position of nobility. Joseph Mackool ended the conversation by stating that plaintiffs no longer wished to accept the settlement offer.

Dobberstein called Joseph Mackool again on July 1, 2008 to discuss potential settlement of this case. The possibility of Joseph Mackool representing himself in proper person arose. Dobberstein explained that although Joseph Mackool could represent himself in the lawsuit, he could not represent his family members. Dobberstein also indicated that he would place an attorney's lien against the case file should Joseph Mackool remove him as counsel. After a heated exchange between counsel and

client, Joseph Mackool calmed down and again authorized Dobberstein to accept the offer of $35,000 on plaintiffs' behalf.[1] Dobberstein contacted defense counsel later in the day and accepted the settlement offer. *See* Exh. D to Mot. (#24).

On July 8, 2008, counsel for Clayton Homes sent Dobberstein a liability release for the Mackools to execute before the settlement monies could be transferred. Dobberstein attempted to contact the Mackools on numerous occasions to complete the release and ascertain the desired division of the settlement amount amongst the four (4) plaintiffs. Exh. F to Mot. (#24). Joseph Mackool responded to Dobberstein on July 9, 2008 in the form of a letter titled "Breach of Contract (Notice of Felony Crime)." *See* Notice (#20). He accused Dobberstein therein of coercing him into settling for $35,000. *Id.* Specifically, Joseph Mackool stated that Dobberstein threatened to use his "power of attorney," or stop representing plaintiffs, if they did not accept the offer. *Id.* Mackool also reiterated his belief that Dobberstein committed treason and violated his fiduciary duty to his clients by swearing a secret four (4)-part oath to England and assuming the postnominal honorific of Esquire. *Id.*

Dobberstein tried to get in touch with Joseph Mackool on several occasions to discuss the allegations set forth in the July 9, 2008 letter. He was finally able to reach him on July 23, 2008. During this telephone conversation, Joseph Mackool said he was willing to accept the offered $35,000 if Dobberstein would reduce his attorney's fees by $5,000. Dobberstein refused, and Joseph hung up the phone. Dobberstein sent a letter to Joseph Mackool memorializing their conversation and offering the Mackools a fee reduction of an uncertain amount, but less than $5,000. Exh. 4 to Joinder (#30). There was no response. Clayton Homes filed the present Motion (#24) on August 1, 2008.

### DISCUSSION

A settlement agreement may be set aside where it was procured by fraud, duress, or failure of informed consent. *Pardi v. Kaiser Permanente Hosp., Inc.*, 389 F.3d 840, 848 (9th Cir. 2004). In this

---

[1] Welch and Amanda Rivera, senior legal assistant at Dobberstein & Associates, witnessed all telephone conversations (over speaker phone) that took place between Dobberstein and Joseph Mackool on July 1, 2008, and have provided affidavits detailing their contents. *See* Exh. 2 and 3 to Joinder (#30).

case, Joseph Mackool does not claim that Clayton Homes concealed facts that it had a duty to reveal, or induced him to settle as a result of economic duress. Neither does Joseph Mackool contend that he lacked informed consent because he did not understand the agreement. Instead, he argues that his attorney, Dobberstein, started "tripping out," threatening him, telling him he would be "squshed [sic] like a bug," and badgering him to make a quick decision in favor of settlement. Opp'n (#25) at 1. Joseph Mackool states that he "might have said yes" because he was pressured to do so by counsel. *Id.* However, coercion by one's own counsel alone does not justify setting aside a settlement that is not unfair. *See Gilbert v. United States*, 479 F.2d 1267, 1268-69 (2d Cir. 1973) ("Even if appellant had a claim against his own counsel for coercion or overbearing, this would not permit the settlement, one which was not claimed to have been unfair, to be overturned.").

Joseph Mackool doesn't contend that the settlement is unfair or unconscionable (nor have the other plaintiffs contested its validity). Moreover, Joseph's contention that Dobberstein coerced him into accepting Clayton Homes' global settlement offer is belied by his general lack of credibility: In his papers and at the October 7, 2008 hearing, Joseph Mackool asserted that his attorneys committed treason and violated their fiduciary duty by swearing a secret four (4)-part oath of allegiance to England in order to become members the State Bar of Nevada. By swearing an oath to a "British accredited regency," Dobberstein and Welch have, according to Joseph Mackool, violated the "Immigration and Naturalization Act." And, by taking the title of Esquire, Dobberstein and Welch have illegally assumed a position of nobility.

Although voices were raised by both counsel and plaintiffs during their meetings and telephone conversations, the court finds that no threats were made by counsel, nor were other forms of coercion employed to force plaintiffs' acceptance of the settlement offered them. Dobberstein simply endeavored to persuade Joseph Mackool that it was in plaintiffs' best interests to accept its terms.

. . .

. . .

. . .

**RECOMMENDATION**

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that defendant's Motion to Enforce Settlement Agreement (#24) should be granted.

DATED this 4th day of November, 2008.

_____
**LAWRENCE R. LEAVITT
UNITED STATES MAGISTRATE JUDGE**